Raymond VIOLETTE [1]

v.

LEO VIOLETTE & SONS, INC. et al.

Supreme Judicial Court of Maine.

Argued Sept. 26, 1991.

Decided Oct. 18, 1991.

Mark Susi (orally), Farris, Susi, Ollen, Heselton & Ladd, Gardiner, John D. Pelletier (orally), Goodspeed & O'Donnell, Augusta, for employee.

---

**1.** The employee Raymond Violette died as a result of his injuries on January 6, 1988. The present petition is brought by his estate, his widow, and his minor children, including a minor child of a prior marriage.

Alan M. Muir (orally), Kevin Gillis, Eve Cimmet, Richardson & Troubh, Portland, for employer.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Justice.

The employer, Leo Violette & Sons, Inc., and its insurer appeal from a decision of the Appellate Division of the Workers' Compensation Commission that affirmed the Commission's award of 100% permanent impairment benefits to the estate and dependents of the decedent employee. The employer challenges the Commission's authority to award permanent impairment benefits in addition to death benefits when the work-related injury ultimately causes death. We hold that the statute does not provide for the payment of a weekly benefit for permanent impairment for the period of time following death. We vacate the award.

Raymond Violette, an employee of Leo Violette & Sons, Inc., sustained severe compensable injuries in an automobile accident in December of 1987, and died from those injuries thirty-three days later. The employer commenced paying weekly death benefits to employee's dependents pursuant to 39 M.R.S.A. § 58–A (1989). The widow, relying on the period of time between the date of injury and date of death, filed a petition for permanent impairment benefits. The Commission granted her petition and awarded benefits for 100% permanent impairment. Although the order contained no explicit provision concerning the amount of the payment, both the Commission and the parties assumed that a single payment based on a schedule set forth in 39 M.R.S.A. § 56–B(1) (1989) was required. The schedule provides a formula resulting in a payment representing two-thirds of the state average weekly wage for 399.5 weeks. In the present case, the sum of the payment would be $82,795.04. The Appellate Division affirmed, concluding that the statute compelled the award of a single payment in the amount suggested by the schedule.

We ordinarily afford a measure of deference to an interpretation given a statute by those charged with its administration, but such an interpretation is never binding on this court. *See Soucy v. Board of Trustees of the Maine State Retirement System*, 456 A.2d 1279, 1281 (Me.1983). After finding that the employee had suffered permanent impairment as defined in 39 M.R.S.A. § 2, the Commission relied on the language in section 56–B to determine that the employee was entitled to benefits:

In the case of permanent impairment, the employer shall pay the injured employee a weekly benefit equal to ⅔ of the state average weekly wage ... for the number of weeks shown in the following schedule....

The Commission then applied the following language in 39 M.R.S.A. § 60 (1989) to conclude that permanent impairment benefits were mandated in this case:

If the employee shall die before having received the entire amount of compensation to which he is entitled under this Act, the compensation payable to him before his death shall be paid to his dependents....

The Commission's construction of the interaction between sections 56–B and 60 comports with our decision in *Bean v. H.E. Sargent, Inc.*, 541 A.2d 944 (Me.1988) (posthumous permanent impairment award not barred by section 60), but it ignores the fact that section 56–B results from a 1987 amendment not applicable in *Bean*. The question now is not whether permanent impairment benefits that accrue prior to death can be awarded posthumously, but rather, whether the permanent impairment benefits under the amended version of the statute extend beyond death.

In 1987 the Legislature enacted section 56–B and repealed the requirement for a single payment, replacing it with a weekly benefit. When we held in *Bean* that section 60 did not preclude a posthumous award of permanent impairment benefits, we were applying the pre–1987 version of the statute which mandated a single payment based on the schedule now set forth

in section 56–B. Prior to his death, the employee in *Bean* was therefore entitled to the complete payment under the statute in effect at the time.[2] By accruing benefits weekly under the current law, the Legislature forecloses payments for the period of time after death. The Workers' Compensation Act contains no provision for an extension of such benefits beyond death and section 60 authorizes the dependents to collect only those payments that were "payable to him [the employee] before his death." Under the 1987 amendment, the employee or his dependents are entitled to claim permanent impairment benefits for the number of weeks he survived the injury, and thereafter his dependents are entitled to claim only death benefits.[3]

The remaining language set forth in section 56–B(1) offers further support for the conclusion we reach. That section expressly states that compensation for permanent impairment is in addition to compensation for partial or total incapacity, but omits any reference to death benefits.[4] In construing the language of a statute, it is appropriate to apply the maxim "expressio unius est exclusio alterius est." *See Lee v. Massie,* 447 A.2d 65, 68 (Me.1982); *Wescott v. Allstate Ins.,* 397 A.2d 156, 169 (Me. 1979). In this case, the omission of death benefits from the provision allowing duplicate recovery confirms the Legislature's intention that weekly permanent impairment benefits are not to be awarded in addition to death benefits for the same period of time.

The entry is:

Decision of the Appellate Division vacated. Case remanded to the Appellate Division with instructions to remand to the Commissioner for further proceedings consistent with the opinion herein.

All concurring.

---

**2.** At the time of *Bean,* permanent impairment benefits were governed by former sections 56 and 56–A, which provided:

> In addition to the benefits provided for in sections 54 and 55, when an employee sustains an injury which is included in the following schedule, the incapacity in each case shall be deemed to be total for the period specified and the injured employee shall receive a lump sum payment for said injury, which shall be determined by multiplying the amount to which he would be entitled weekly for total incapacity under section 54 by the period of presumed total incapacity set forth in this section. . . .

**3.** 39 M.R.S.A. § 71–A (1989) preserves the option for the employee and employer, with Commission approval, to agree to a lump sum settlement in discharge of an employer's liability for future payment of permanent impairment benefits.

**4.** The last sentence of section 56–B(1) provides: "Compensation under this section is in addition to any compensation under section 54–B or 55–B received by the employee." Sections 54–B and 55–B provide for partial incapacity and total incapacity benefits. The Legislature recently amended the last sentence of section 56–B(1) to provide that compensation for permanent impairment is reduced by any compensation for partial or total incapacity. P.L.1991, ch. 615, Pt.D, § D–8, effective Jan. 1, 1992.