STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-277

ROBERT FOGARTY, et al.,

        Plaintiffs

    v.

JONES EXPRESS, INC.,

        Defendant

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

AUG 5 2002

Following hearing the Plaintiffs' Motion for Summary Judgment is Granted and the Defendant's Motion for Summary Judgment is denied, as follows.

## FACTUAL BACKGROUND

On April 12, 1966, an assistant Attorney General provided a written memorandum to the Maine Department of Labor addressing the issue of overtime pay for Maine's interstate motor carrier employees. DSMF ¶ 7. This memorandum concluded that employees of interstate carriers in Maine are not entitled to overtime pay because those employees fall under the authority of the federal Fair Labor Standards Act (FLSA). Plaintiffs' Response To Defendants' Statement Of Material Facts In Support Of The Motion For Summary Judgment Page 2. While FLSA provides for time and one-half wages for work over 40 hours in a single workweek, it also contains a "Motor Carrier Exemption" that excludes employees of interstate motor carriers from its overtime provisions. 29 U.S.C. 207; 29 U.S.C. 213(b)(1).

Plaintiffs (Robert Fogerty, Joseph Frost, Dennis Carver, Donald S. Collins, and Kenneth Castonguay) were formerly employed as truck drivers by the Defendant, Jones Express, Inc. DSMF ¶ 1,2. Defendant is a motor carrier whose business involves

interstate commerce. DSMF ¶ 1. There were workweeks during Plaintiffs' employment when they worked more than 40 hours and were not compensated at an increased rate for those hours.

On March 8, 2001, Maine's Chief Deputy Attorney General Linda M. Pistner informed Plaintiffs' counsel by letter that, upon review, the 1966 memo appeared to be "outdated." Plaintiffs' Record Citation V. Ms. Pistner wrote that she would attach to the 1966 memo a copy of her letter in order "to notify the public that (the 1966 memo) is no longer the view of this office."[1] Plaintiffs' Record Citation V.

On March 26, 2002, the Maine legislature passed legislation, *An Act to Amend the Maine Overtime Pay Provisions Regarding Certain Drivers and Drivers' Helpers*, Chapter 628 of the Public Laws of 2002, to establish an exemption from Maine's overtime law for interstate motor carriers. The legislation was made retroactive to January 1, 1995; it was passed in an "emergency" posture so that it would take effect immediately upon enactment; and the Governor signed it into law on April 5, 2002. The bill was written to exclude pending lawsuits, including the instant case. Id.

## DISCUSSION

The critical issue regarding the cross-motions for summary judgment is whether the reliance within the industry on the 1966 interpretation of FLSA and Maine's overtime law as applied to motor carriers, together with the Doctrine of Legislative Acquiescence, should control over the plain language of the statutes and the more recent contradictory judicial interpretations of these statutes from other jurisdictions.

---

[1] It should be noted that the case law which rendered the 1966 memo "outdated" began developing in 1972.

Under FLSA, no employee involved in interstate commerce may work more than 40 hours in the same workweek unless that employee receives one and one-half that employee's regular pay for the hours over 40. 29 U.S.C. §207. FLSA also exempts certain categories of employees from its overtime provisions. 29 U.S.C. §213. The "Motor Carrier Exemption" at 29 U.S.C. §213(b)(1) exempts employees of interstate motor carriers. FLSA also provides that its provisions shall not excuse noncompliance with more stringent federal or state laws or municipal ordinances. 29 U.S.C. §218(a).

Under Maine law, employers "may not require an employee to work more than 40 hours in any one week unless 1 1/2 times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week." 26 M.R.S.A. §664. A list of occupations exempted from Maine's overtime law is provided at 26 M.R.S.A. §664(3), and interstate motor carrier employees were not listed until the recent amendment.

Defendant concedes that currently developing case law holds that state overtime laws are not pre-empted by FLSA's "motor carrier exemption." Defendant's Opposition to Plaintiffs' Motion for Summary Judgment at 1. However, Defendant cites cases supporting judicial deference to an administrative interpretation of a statute by the agency charged with administering the statute. *See Maine Human Rights Comm'n v. Local 1361, United Paperworkers Int'l Union AFL-CIO, et al.*, 383 A.2d 369, 378 (1978); *Harriman v. Commissioner, DHS*, 595 A.2d 1053, 1057, fn.7 (Me.1991); *United States v. Clark, et al.*, 454 U.S. 555, 565 (1982). Defendant also cites authority for the proposition that an administrative interpretation has been legislatively ratified in cases where the legislature later acts on the relevant statute but leaves unchanged the text in question. *See Saxbe, Attorney General, et al. v. Bustos, et al; Cardona, et al. v. Saxbe,*

3

*Attorney General, et al.,* 419 U.S. 65, 74 (1974); *Zemel v. Rusk, Secretary of State,* 381 U.S. 1, 11-12 (1965); *United States, et al. v. Rutherford,* 442 U.S. 544, 553-54 (1979). Furthermore, the intent of the 120th Maine Legislature was clearly demonstrated when, in March of this year, it voted to exempt retroactively interstate motor carriers from the state's overtime law. Plaintiffs' Opposition To Defendants' Supplementary Brief Attachment A.

However, the distinction between the case law regarding legislative acquiescence and the present case is that we are not here faced with a debatable interpretation of ambiguous legislative language. The text of the statute is clear and unambiguous. While subsequent legislative actions may have been influenced by the now discredited 1966 memo, any such mis-interpretation arises from the language of the memo and not from the text of the statutes. In fact, the legislature's recent action to place interstate motor carriers on the list of employees exempt from the state's overtime law serves to recognize the failure of prior law to provide the exemption.

It is a well-established tenet of statutory construction that the Court looks first to the language of the statute itself. *See Soucy v. Board of Trustees Of The Maine State Retirement System,* 456 A.2d 1279 (Me.1983); *Consumer Product Safety v. GTE Sylvania, Inc.,* 447 U.S. 102 (1980). If the meaning of the language is plain, the Court must interpret the statute to mean exactly what it says. *Concord General Mut. Ins. Co. v. Patrons-Oxford Mut. Ins. Co.,* 411 A.2d 1017, 1020 (Me. 1980). While there was an apparent misinterpretation of the state and federal laws in the present case, there is no patently ambiguous language to decipher. Without ambiguity, there is no basis on which to proceed to consult legislative history or consider the doctrine of legislative acquiescence for clarity. The plain language of Maine's overtime statute indicates that interstate motor carriers were not exempt from the state's overtime law.

4

In its recent amendment to 26 M.R.S.A. §664, (3), the legislature, in section 4, Legislative Intent, findings, acknowledges the misunderstanding created by the 1966 memorandum:

> The Legislature finds that the practice in the State for at least 30 years has been that interstate truck drivers and other employees involved in interstate trucking have been exempted from the Maine overtime law. This practice was developed in reliance on a 1966 written interpretation by the Department of the Attorney General and an interpretation of the Department of Labor that federal overtime law superceded Maine law. These interpretations led the Department of Labor to routinely defer enforcement of overtime to the Federal Government. As a result of this longstanding practice, a majority of employers and employees have adjusted their expectations and developed compensation practices that take into account the Department of Labor's interpretation that there is no statutory requirement for overtime pay.

These findings could be read as an invitation from the legislature to the judiciary to invoke the doctrine of legislative acquiescence in this case, and I am sorely tempted to accept. However, to do so would be to legislate rather than adjudicate.

The entry will be as follows:

The Plaintiffs' Motion for Summary Judgment on Liability is Granted.

The Defendant's Motion for Summary Judgment is Denied.

The clerk may incorporate this order in the docket by reference.

Dated: July 29, 2002

PLAINTIFFS:
Donald F. Fontaine, Esq.
FONTAINE & BEAL
PO BOX 7590
PORTLAND ME   04112

G. Arthur Brennan
Justice, Superior Court

DEFENDANT
Philip J. Moss, Esq.
MOON MOSS MCGILL HAYES & SHAPIRO
PO BOX 7250
PORTLAND ME   04112-7250

5